[Cite as *State v. Fields*, 2019-Ohio-2252.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J<br>Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2018CA00159 |
| BRANDON MALIK FIELDS | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:    Appeal from the Stark County Court of
Common Pleas, Case No.
2018CR1152(C)


JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    June 6, 2019


APPEARANCES:


For Plaintiff-Appellee    For Defendant-Appellant

JOHN D. FERRERO    BERNARD L. HUNT
Stark County Prosecuting Attorney    2395 McGinty Road, N.W.
North Canton, Ohio  44720

KRISTINE BEARD
Assistant Prosecuting Attorney
110 Central Plaza South – Ste. #510
Canton, Ohio  44702

*Hoffman, J.*

**{¶1}** Appellant Brandon Malik Fields appeals the judgment entered by the Stark County Common Pleas Court convicting him of robbery (R.C. 2911.02(A)(2)) and assault (R.C. 2903.13(A)) and sentencing him to an aggregate term of incarceration of six years. Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Diana Johnson met Sean Jefferson through an online dating service in early May, 2018. They frequently talked and hung out together thereafter. Diana attended a party at her cousin's duplex on May 23, 2018. She called Sean to ask him to come to the party in the 3100 block of Kalahari St. in Canton, Ohio. She asked him to bring her a Black and Mild cigarette and to park behind the duplex, near a dumpster.

**{¶3}** Sean arrived between 6:30-7:00 p.m., and parked where instructed. Diana was outside waiting for him. He gave her the Black and Mild, which she smoked outside. She told Sean smoking was not permitted at the party. While standing outside, Sean saw a man approaching from the left, and two men approaching from the other direction. Sean had a bad feeling about the situation.

**{¶4}** According to Diana, two men, Kevin Proctor and Appellant, who she knew as "Mozzy," were at the party and approached her and Sean outside. Proctor asked Sean for a cigarette. Sean told Proctor he didn't smoke. Proctor then asked for a "buck." Tr. 132. Sean said he didn't have a buck, but he had hundreds, referring to money. Proctor and Sean started to walk to Sean's car, when Proctor threw Sean to the ground. Appellant kicked Sean several times, and Proctor punched Sean. When Diana ran to kick Proctor, Appellant picked her up and slammed her to the ground. She got up and ran to her mother's house. Before she left, she saw keys in Proctor's hand.

{¶5}     According to Sean's recollection of the evening, one of the men who approached him outside asked for money.  Sean replied he didn't have any money.  The man told Sean he needed a "band," or one thousand dollars.  Tr. 175.  Sean walked to his car to get a crow bar for protection.  As he was walking, he was thrown to the ground and kicked by two men – one wearing boots, and one wearing gym shoes.  The men kicked Sean multiple times.  He did not recognize any of the men.  He lost consciousness, and woke up as the men were attempting to use the fingers of his left hand to unlock his cell phone.  While lying on the ground, he saw Diana walk away.  After the men left in his car, Sean got up and walked toward the road.  A girl stopped to help him.  He next woke up in the back of an ambulance.  The men who assaulted him took his wallet, cell phone, keys, and rental vehicle.  Sean was not able to identify Appellant nor Proctor.

{¶6}     Detective Joseph Pileggi of the Canton Police Department was assigned to the case.  In speaking with Sean, he learned Sean believed Diana set him up for the robbery.  Detective Pileggi's attempts to contact Diana were unsuccessful.  Det. Pileggi issued a warrant for Diana's arrest for complicity to commit robbery, and she was arrested by a U.S. Marshall in June of 2018.

{¶7}     Diana identified Proctor to Det. Pileggi by name.  She told the detective the other man went by the name "Mozzy Mac" on Facebook, and his first name was Brandon.  Det. Pileggi circulated a photograph of the man Diana knew as Mozzy around the police department, and a patrol officer identified the man as Appellant.  Diana identified photos of both men.

{¶8}     Sean's rental vehicle was recovered two weeks later.  Two juveniles were arrested in conjunction with the stolen vehicle.

{¶9}  Appellant was indicted by the Stark County Grand Jury with complicity with Kevin Proctor and Diana Johnson in the commission of robbery and assault.   Appellant and Proctor were tried jointly by jury trial in the Stark County Common Pleas Court. Appellant was convicted as charged and sentenced to six years incarceration for robbery and thirty days incarceration for assault, to be served concurrently.

{¶10} It is from the October 5, 2018 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:


THE TRIAL COURT'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.


{¶11}  Appellant argues the judgment of conviction is against the manifest weight and sufficiency of the evidence because Diana Johnson's testimony was inconsistent and self-serving, and therefore not credible.  He also argues Det. Pileggi's investigation was faulty because he failed to examine the recovered rental vehicle for DNA and fingerprint evidence.

{¶12} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶13}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶14}** Appellant was convicted of robbery in violation of R.C. 2911.02(A)(2), which provides:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

**{¶15}** He was also convicted of assault in violation of R.C. 2903.13(A), which states, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

**{¶16}** Appellant argues the only person who identified him as one of the men involved in the theft and assault on Sean Jefferson was Diana Johnson, and her testimony was inconsistent, self-serving, and therefore not credible.  He argues based on the lack of credibility of her identification testimony, the judgment is against the manifest weight and sufficiency of the evidence.

{¶17} Diana identified Appellant and Proctor as the two men involved in the assault and robbery. She had previously identified the men to police, naming Proctor and stating she knew Appellant by the name "Mozzy." After police identified "Mozzy" as Appellant, she was able to identify both men from photographs presented to her by Detective Pileggi. Her identification testimony was sufficient, if believed by the jury, to support the convictions of robbery and assault.

{¶18} Further, we find the jury did not lose its way in finding her testimony credible as to the identification of Appellant as one of the men involved in the assault and robbery of Sean Jefferson. The jury was made aware of the inconsistencies between her testimony and Sean's testimony, and further was aware she previously told police a third man was present, who tried to break up the assault. The jury was aware she was charged as an accomplice in the incident. Counsel for Appellant and Proctor criticized her actions in running from the scene, failing to call the police, and refusing to talk to police until she was arrested for the crime. In spite of the concerns placed before the jury concerning her credibility, the jury chose to believe her identification testimony. Because the trier of fact is in a better position than this Court to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus (1967).

{¶19} Appellant also argues the judgment is against the manifest weight of the evidence because Det. Pileggi failed to process Sean's rental car for fingerprints and DNA after the car was recovered. Det. Pileggi testified the car was recovered two weeks after the incident, in the hands of two juveniles who gave no information as to how they

received the car. He testified the car was not processed because in his experience, a stolen vehicle may change hands four to five times a night. Tr. 238. He further testified because the car was a rental, it would have the prints and DNA from many people present inside. Tr. 239. From his testimony the jury could conclude processing the car for prints and DNA in an attempt to link Appellant to the stolen vehicle would have been a fruitless venture. We find the lack of scientific evidence linking Appellant to the car does not render the judgment against the manifest weight and sufficiency of the evidence.

{¶20} The assignment of error is overruled.

{¶21} The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, J.
Gwin, P.J. and
Delaney, J. concur